**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS** | **CIVIL ACTION NO.** |
| | **JUDGE:** |
| **VERSUS** | **MAGISTRATE JUDGE:** |
| **MADERE & SONS TOWING, L.L.C.** | **SECTION:** |

## COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes the Board of Commissioners of the Port of New Orleans ("Board"), who respectfully asserts a claim against MADERE & SONS TOWING, L.L.C. f/k/a MADERE & SONS TOWING, INC. ("Defendant" or "Madere & Sons Towing"), as owner/operator of the TUG LADY JOSIE ("Vessel") as follows:

## PARTIES

1.     Plaintiff, Board of Commissioners of the Port of New Orleans, is an independent political subdivision of the State of Louisiana, within the jurisdiction of this Court, and at all material times owned the Almonaster Avenue Railroad Bridge and its fender system (collectively, the "Bridge"), located approximately two miles south of Lake Pontchartrain in the Inner Harbor Navigational Canal, and the Morrison Yard Wharf (the "Wharf"), located at 7000 Jourdan Road on the east bank of the Inner Harbor Navigation Canal, in Orleans Parish.

2.     Defendant, is a Louisiana limited liability company, with its principal business establishment in Belle Chasse, Louisiana, and was the owner of the TUG LADY JOSIE at all times pertinent to this litigation.

1

**JURISDICTION AND VENUE**

3.     This is a case of admiralty and maritime jurisdiction, brought under the Admiralty Extension Act, 46 U.S.C. Section 30101, 28 U.S.C. Section 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for maritime tort.

4.     The amount in controversy exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs, for each of the herein-described allisions.

5.     Venue is proper in this Court pursuant to 28 U.S. Code § 1391 (B) because the damages inflicted in each of the herein-described allisions were upon property located in this judicial district.

**FACTS AND ALLEGATIONS**

6.     On November 15, 2019[1], the Vessel was pushing the barge Marmac #20 northbound in the Industrial Canal in New Orleans, Louisiana, when it approached the Bridge.

7.     At approximately 3:13 p.m., the bridge tender raised the Bridge to allow passage to the Vessel. At approximately 3:21 p.m., the Vessel passed through the bridge and subsequently allided with the northwest fender system, which caused the entire northwest fender system to move to the north approximately one foot, with some tinder members breaking on impact. Further, the Vessel caused extensive damage to the northwest fender system and the trunnion pier, with all of the timber cross bracing and struts becoming loose, missing, or submerged from the vessel's impact.

---

[1] The Board and Madere & Sons Towing entered into Tolling Agreements, which suspended the running of any statute of limitations, in order to allow for the total costs to be determined after completion of repairs and for an opportunity to amicably resolve the matter prior to suit. Those efforts were unsuccessful and this suit is timely brought pursuant to the Tolling Agreements.

8.      On January 21, 2020[1], the Vessel was again pushing the barge Marmac #20 northbound in the Industrial Canal in New Orleans, Louisiana, when it approached the Bridge.

9.      At approximately 7:09 p.m., the bridge tender raised the Bridge to allow passage to the Vessel. At approximately 7:12 p.m., the Vessel approached the Bridge and allided with the southwest fender system and southwest dolphin, causing extensive damage to the Bridge, including the frontal wales at the southwest dolphin and timber beams at the southwest fender.

10.     The allisions were caused solely through the fault of the Vessel and those responsible for her condition, navigation, and operation, including the Defendant, in the following non-exclusive particulars:

a.  The Vessel was unseaworthy;

b.  The individuals in charge of navigating and maintaining the Vessel were careless, improperly trained, incompetent, and/or inattentive to their duties, in violation of the navigational rules and other applicable statutes and regulations;

c.  The Defendant and managers of the Vessel failed to properly inspect and maintain the Vessel, failed to ensure that the Vessel was properly and sufficiently crewed with individuals capable of performing operations and failed to take all actions necessary to ensure that the Vessel was seaworthy in advance of the voyage in question;

d.  The crew of the Vessel failed to properly maintain and monitor her engine(s) and its control systems and/or auxiliary engine(s) and/or generator(s);

e.  The Vessel lost control of her course;

f.  The Vessel and/or the Defendant and/or her crew failed to do what should have been done to avoid the aforesaid allision;

3

g. The Vessel failed to take early and substantial action to avoid alliding with the Bridge owned by the Board; and

h. The Board reserves the right to amend and supplement this paragraph of its Complaint and to specify further or different faults and/or negligent acts or omissions of the Defendant as the evidence obtained through discovery may later support.

11. The Allisions occurred as a result of the negligence, carelessness, and/or fault of Defendant, as owner/operator of the Vessel, and/or their principal, agent, and/or employee, and/or as a result of unseaworthiness and/or improper operation of the Vessel, which was within the privity and knowledge of Defendant, their principals, agents, and/or employees.

12. The Board did not cause or contribute in any way to the allisions and/or the damages suffered as a result thereof.

13. Further, presumptions of fault against Defendant arise under THE OREGON Rule, THE LOUISIANA Rule, and/or THE PENNSYLVANIA Rule with regard to both allisions.

14. The Board seeks compensation for the following non-exclusive damages it incurred in each allision: damages to the Bridge, damages to the Wharf, and any other property damage, repair costs, dockage and security fees, rent reduction, increased overhead, loss of use, and other economic damages not yet realized and which are reasonable under the circumstances. The Board additionally seeks punitive damages for the unreasonable, indifferent, reckless, and/or grossly negligent conduct of Defendant. The Board also seeks the costs of these proceedings, including attorneys' fees, pre-judgment interest, post-judgment interest, and to have all expert witness fees taxed as costs of court.

**WHEREFORE,** the Board of Commissioners of the Port of New Orleans respectfully requests that: (1) this Complaint for Damages be deemed good and sufficient; (2) after due

proceedings, judgment be entered against Defendant for the full amount of the Board's damages, together with interest from the date of each Allision; (3) all costs of litigation, including attorneys' fees and expert witness fees, be taxed against Defendant; and (4) the Court grant the Board all other and further relief to which the Board is entitled and which the Court deems just and proper.

Respectfully submitted:

**ROEDEL PARSONS BLACHE FONTANA
   PIONTEK & PISANO**

/s/ Charles M. Pisano
Charles M. Pisano (La. Bar No.19107)
Richard L. Seelman (La. Bar No. 17241)
Jan K. Frankowski (La. Bar No. 23080)
1555 Poydras Street • Suite 1700
New Orleans, Louisiana 70112
Telephone: (504) 274-1904
Email: cpisano@roedelparsons.com
       rseelman@roedelparsons.com
       jfrankowski@roedelparsons.com

and

**BOARD OF COMMISSIONERS OF THE PORT
OF NEW ORLEANS**

/s/*Jean-Paul A. Escudier*
Jean-Paul A. Escudier (Bar No. 29177)
Michelle W. Scelson (Bar No. 33428)
W. Nicholas Dietzen, IV (Bar No. 31135)
Board of Commissioners of the Port of New Orleans
1350 Port of New Orleans Place
New Orleans, Louisiana 70130
Telephone (504) 528-3231
Email:  jpescudier@portnola.com
        michelle.scelson@portnola.com
        walter.dietzen@portnola.com

*Attorneys for the Board of Commissioners of the
Port of New Orleans*